4 F.3d 985
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
MORRIS SQUARE ASSOCIATES LIMITED PARTNERSHIP,
Plaintiff-Appellant,
v.
Jordan ROSS, Defendant-Appellee,
and SEAY & THOMAS EQUITIES, INCORPORATED; Charleston
Building Corporation, Defendants.
 No. 92-2314.
 United States Court of Appeals,
Fourth Circuit.
 Argued: June 7, 1993.
Decided: September 3, 1993.
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Charleston. John T. Copenhaver, Jr., District Judge. (CA-89-1468)
 ARGUED: Phillip Rodney Jackson, Ditrapano & Jackson, Charleston, West Virginia, for Appellant.
 Michael Robert Cline, Michael R. Cline Law Offices, Charleston, West Virginia, for Appellees.
 ON BRIEF: Lonnie C. Simmons, Ditrapano & Jackson, Charleston, West Virginia, for Appellant.
 S.D.W.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, and WIDENER and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Morris Square Associates Limited Partnership (Morris Square) challenges the district court's grant of judgment as a matter of law to Appellee Jordan Ross on Morris Square's claim of fraud in the inducement as to a real estate sales contract. Finding no error, we affirm.
 
 
 2
 * The dispute in this case concerns a contract for the sale of an office building owned by Appellant Morris Square. The purchaser of the building was Seay & Thomas Equities, whose agent was Appellee Jordan Ross. On October 5, 1989, Morris Square filed a complaint against Ross and others alleging recision of the contract and fraud in the inducement. Prior to trial, the parties agreed to the dismissal of all Defendants except Ross.
 
 
 3
 Morris Square pursued its fraud claim against Ross in a jury trial commencing on April 15, 1991. The testimony at trial centered on the negotiations leading up to the execution of the contract. Morris Square argues that this testimony supports the jury's finding below that Ross fraudulently induced Morris Square to enter into the contract. This evidence is outlined in detail in the district court's opinion, and we will not repeat it here. To summarize, the original purchase price for the building was $7.8 million dollars, contingent on the execution, within 15 days of closing, of a rental contract with the building's primary lessee, the State of West Virginia. A rider to the real estate contract specified that the lease with the State of West Virginia was to be for a term of not less than twenty years, and the rent to be paid was $80,000 a month. Unless this condition precedent was satisfied, each party had a right to withdraw from the contract.
 
 
 4
 Eventually the rental contract with the State of West Virginia was executed in accordance with the above terms with one exception: West Virginia was obligated to pay only $75,000 a month for the first two years of the lease. The lower rental rate negotiated to be paid by the State of West Virginia reduced Seay & Thomas' expected monthly rental income. Even so, Seay & Thomas agreed to pay the original contract price of $7.8 million subject to several conditions outlined in a June 7, 1988, addendum to the contract. Most relevant for our purposes here is paragraph four of the addendum, which provided that Morris Square would pay Seay & Thomas or its nominee an additional $4,800 a month for two years. These payments, referred to by the parties as "shortfall" payments, represented the difference between expected and actually negotiated lease payments to be received by the State of West Virginia. The parties subsequently agreed that Morris Square could satisfy its obligations under the shortfall addendum by making a lump sum payment of $105,000. Morris Square paid this amount at closing and the contract for the sale of the building was completed.
 
 
 5
 The crux of Morris Square's fraud allegation at trial was that it had been tricked into making the $105,000 payment. Morris Square contended that Jordan Ross represented to it that the bondholders providing financing on contract would not finance the sale unless the bondholders were satisfied with the project's monthly cash flow. Accordingly, Morris Square claims it agreed to pay the shortfall amount only to keep the bondholders from walking away from the project. In fact it appears the bondholders' support was not contingent on Morris Square's payment of the shortfall amount. Jordan Ross kept the $105,000 as a commission on the sale.
 
 
 6
 On April 18, 1991, the jury returned its verdict in favor of Morris Square, awarding $105,000 in compensatory damages and $35,000 in punitive damages. Ross then moved, pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, to have the jury's verdict set aside.
 
 
 7
 The district court granted Ross' motion for judgment notwithstanding the verdict. The court reasoned that even if Ross had created the false impression that the bondholders would receive the shortfall payment, Morris Square and its representatives were not justified in relying on the false impression. Because justifiable reliance is a necessary element of a fraud claim under West Virginia law, the district court entered judgment in favor of Ross. Morris Square appealed.
 
 II
 
 8
 Under West Virginia law, Morris Square was required to prove five elements to sustain its fraud claim against Ross: (1) Ross made or concealed representations of material facts that were false; (2) that Ross knew such representations were false; (3) that Ross made the statements intending to induce reliance; (4) that Morris Square justifiably and reasonably relied on the false representations; and (5) Morris Square was thereby injured. See Whitlock v. Duke Univ., 829 F.2d 1340 (4th Cir. 1987); Lengyel v. Lint, 280 S.E.2d 66, 69 (W. Va. 1981). The jury was instructed as to the applicable law, and returned a verdict in favor of Morris Square. Settled legal principles required the district court to leave the jury's verdict in favor of Morris Square undisturbed unless, viewing the evidence in a light most favorable to Morris Square, no reasonable jury could have entered a judgment in favor of Morris Square. Wyatt v. Interstate & Ocean Transp. Co., 623 F.2d 888, 891 (4th Cir. 1980). Despite this stringent standard, the district court determined that Morris Square had failed to show, inter alia, that its reliance was justifiable under the circumstances of this case.
 
 
 9
 We agree that there could have been no justifiable reliance on the facts of this case. The terms of the contract (and subsequent amendments to the contract) between the parties did not specify to whom the $105,000 shortfall payment would be made. The only specification was that the payments be made to Seay & Thomas or its nominee. Appellant complains that Ross created the impression in oral negotiations that the money was needed to satisfy the bondholders and that the whole deal would fall through unless someone paid the shortfall amount to the bondholders financing the project. But if Morris Square wanted to ensure that the bondholders were to receive the $105,000, Morris Square could have insisted that the contract addendum contain a written provision to this effect. As the district court noted, it is a familiar principle of contract law that a party is not justified in relying on an oral representation that is inconsistent with the terms of a contemporaneously or subsequently executed contract.
 
 
 10
 There was some discussion at oral argument over whether the record provides any evidence that Jordan Ross was indeed the nominee of Seay & Thomas. Any such dispute is a matter to be settled between Seay & Thomas and Ross, not a matter to be asserted by Morris Square. We conclude that Morris Square's reliance on any false representation made by Ross was not justifiable, and therefore we affirm the decision of the district court granting Ross judgment as a matter of law.
 
 AFFIRMED